IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF VIRGINIA

**Alexandria Division**

| | |
|---|---|
| KENYA BROWN, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | ) Civil Action No. 1:18-cv-186 |
| | ) |
| AKIMA, LLC, | ) |
| | ) |
| Defendant. | ) |

**MEMORANDUM OPINION**

THIS MATTER comes before the Court on Defendant's Motion for Summary Judgement.

This case arises from Plaintiff Kenya Brown's employment with Akima, LLC. Plaintiff is African American and began working for Akima as an independent contractor in November 2014. Akima offered Plaintiff full-time employment as an IT Solutions Analyst on or about May 18, 2015. Plaintiff was an at-will employee at Akima.

Initially Plaintiff worked for Akima's Finance Department, with Scott Bohinc as her supervisor. Plaintiff was then transferred to a Akima's IT department and Navid Falconer became her supervisor. Plaintiff frequently sent emails to Falconer but did not receive a response in a timely manner. Falconer would eventually respond to her emails. Plaintiff received performance reviews in which her supervisors gave her positive reviews. She

did not receive a pay increase. There were other Akima employees who received pay raises. There is no evidence showing that anyone who reported to her supervisor, Falconer, or held the same role as her as an IT Solutions Analyst received a pay raise.

In May 2017, Plaintiff requested that she be permitted to attend the annual Deltek Users Conference, which she was previously permitted to attend when she worked for the Finance Department. On September 30, 2017, Akima informed her that she would not be allowed to attend the conference. Ms. Quam, who had the same supervisor and Plaintiff occasionally assisted in her work, was permitted to attend the conference. Ms. Quam held a higher-level manager position than Plaintiff. Plaintiff names three other Akima employees who were permitted to attend the conference as well, all who were level director or manager employees performing different positions than Plaintiff. One of the employees permitted to attend the conference was African American.

Plaintiff complained to her former supervisor, Bohinc, about not being able to attend the conference. She felt she was being treated differently than other employees by not being able to attend. Plaintiff did not use the word "race" when she was informally complaining to Bohinc. She did not indicate any concern that it was because of her race.

At some point during her employment with Akima, some of Plaintiff's colleagues made unfavorable comments to her. The

comments were: "I know how to do my job."; "You're not going to tell me how to do my job."; "There's not a problem. I don't know why you're here." Plaintiff reported the comments to management. Plaintiff does not know why the comments were made. Two of the individuals who made the comments are also African American.

In the summer of 2017, Defendant looked for ways to consolidate positions or fill work needs in a more cost-effective way. After analyzing Plaintiff's duties, Falconer discovered that Plaintiff's job did not have enough work to warrant a full-time position. In July 2017, Falconer spoke with Akima's Human Resources Department about making Plaintiff's position part-time.

Plaintiff was notified on October 6, 2017 that her position was no longer needed as a full-time role. Plaintiff was offered a part-time, on-call position. Plaintiff was told by her supervisor, Falconer, that if she took the on-call position, Akima would send her to the User Conference. Plaintiff did not take the on-call position because it was not full-time and did not offer any benefits.

Plaintiff did not file a formal internal complaint with Akima regarding race discrimination at any point in her employment. The employee separation agreement between Plaintiff and Akima states that the parties agreed to "mutually sever the employment relationship" on October 20, 2017.

When Plaintiff left Akima, her duties were initially assumed by Macky Wilson and his team, which included Jason Yu and Joanna Weaver. Wilson is African American. Akima currently contracts with an African-American to do the work previously performed by Plaintiff.

On November 8, 2017, Plaintiff filed a complaint with the U.S. Equal Employment Opportunity Commission ("EEOC") alleging discrimination based on race. On November 20, 2017, EEOC notified Plaintiff that it was closing its file on her charge based on the assertion that Akima was exempt from Title VII of the Civil Rights Act.

Plaintiff filed suit in this court on February 20, 2018 against Defendant Akima, alleging five counts: 1) violation of 42 U.S.C. § 2000e et. seq. – discrimination based on race; 2) violation of 42 U.S.C. § 1981; 3) violation of Fairfax County Code §11-1-1 et seq.; 4) retaliation; and 5) hostile work environment.

Defendant filed its Motion for Summary Judgment on January 17, 2019. Plaintiff responded in opposition. The Court finds this case is ripe for summary judgment.

Under Federal Rule of Civil Procedure 56, a court should grant summary judgment if the pleadings and evidence show that there is no genuine dispute as to any material fact and that the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(c); see Celotex Corp. v. Catrett, 477 U.S. 317, 322 (1986). In

4

reviewing a motion for summary judgment, the court views the facts in the light most favorable to the non-moving party. See Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 255 (1986). Once a motion for summary judgment is properly made, the opposing party has the burden to show that a genuine dispute of material fact exists. See Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 586-87 (1986).

The Supreme Court's decision in McDonnell Douglas Corp. v. Green, 411 U.S. 792 (1973), set forth a burden-shifting framework that a plaintiff must satisfy to prove unlawful discrimination where there is no direct evidence of discrimination. The plaintiff must first establish a prima facie case of discrimination, and then the burden of production shifts to the employer to provide a legitimate, non-discriminatory explanation for the employment decision at issue. See Tex. Dep't of Cmty. Affairs v. Burdine, 450 U.S. 248, 253 (1981). Once the employer has done so, the burden of production shifts back to the plaintiff to demonstrate that the employer's explanation is merely pretextual. Id.

To establish a prima facie case of race discriminatory discharge, Plaintiff must establish that 1) she was a member of a protected class; 2) her job performance was satisfactory; 3) she suffered an adverse employment action by her employer; and 4) she was replaced by someone outside her protected class. King v. Rumsfeld, 328 F.3d 145, 149 (4th Cir. 2000).

In this case, Plaintiff contends that her removal from full-time employment qualifies as an adverse employment action. On the other hand, Defendant argues that Plaintiff did not suffer an adverse employment action because she was not terminated from her job, but rather she voluntarily resigned. The Fourth Circuit has said that "an adverse employment action is a discriminatory act which adversely affects the terms, conditions, or benefits' of the plaintiff's employment." James v. Booz-Allen & Hamilton, Inc., 368 F.3d 371, 375 (4th Cir. 2004). "Simply because an employee finds a decision by her employer unappealing does not make that decision a qualifying adverse employment action." Wilson v. City of Chesapeake, 290 F. Supp. 3d 444, 457 (E.D. Va.), aff'd 738 F. App'x 169 (4th Cir. 2018).

The record shows that Defendant never terminated Plaintiff's employment, and Plaintiff cannot establish discriminatory discharge. Plaintiff acknowledges that the employee separation agreement between her and Akima states that the parties agreed to "mutually sever the employment relationship" on October 20, 2017. The record shows that Defendant offered Plaintiff a part-time, on-call position after dissolving the position she held, and Plaintiff declined the offer. The evidence, including Akima's internal paperwork as well as the employee separation agreement, show that the Plaintiff left Akima voluntarily. Plaintiff cannot establish

6

that she was terminated based on race when she agreed to no longer be employed at the company.

Furthermore, Plaintiff's allegations of race discrimination on the basis of the responsiveness of her supervisor's emails, job responsibilities, and being told she could not attend the User Conference do not establish an adverse employment action. Plaintiff cannot establish that these allegations affected the terms, conditions, or benefits of her employment. For these reasons, Plaintiff's voluntary resignation from Akima does not constitute an adverse employment action and she cannot meet her burden in establishing a prima facie case of discrimination based on race.

Additionally, Plaintiff fails to establish the fourth element of her prima facie case for discriminatory discharge. The Fourth Circuit has said that as a general rule, plaintiffs alleging discriminatory discharge "must show that they were replaced by someone outside their protected class in order to make out a prima facie case." King, at 149. When Plaintiff left Akima, her duties were initially assumed by Macky Wilson and his team, which included Jason Yu and Joanna Weaver. Wilson is African American. The record further indicates that Akima currently contracts with an African-American to do the work previously performed by Plaintiff. Therefore, Plaintiff cannot meet her burden in showing that she was replaced by someone who was not African American.

Moreover, Plaintiff has not identified any similarly-situated employees who received more favorable treatment. See Bryant v. Aiken Regional Medical Centers, Inc., 333 F.3d 536, 546 (4th Cir. 2003) (finding that Plaintiff may find it helpful to her claim to submit comparator evidence but it is not a necessary element of a discrimination claim).

Plaintiff argues that she was discriminated against based on her race by not receiving a pay raise despite her good job performance reviews. She contends that two other similarly situated employees received pay raises. However, the record shows that one of the employees Plaintiff contends is similarly situated was in a different department and was a higher-level director than Plaintiff. The other employee was also in a different department and did not report to the same supervisor as Plaintiff. Therefore, these employees are not similarly situated. Additionally, Plaintiff has not presented any evidence showing that anyone who reported to her supervisor, Falconer, or held the same role as her as an IT Solutions Analyst received a pay raise. Therefore, Plaintiff cannot show she was discriminated against by not receiving a pay raise.

Next, Plaintiff argues that she was racially discriminated against based on her job responsibilities and her supervisor's responsiveness to her emails. She compares herself to a Caucasian employee, Ms. Quam, who had the same supervisor and Plaintiff

8

occasionally assisted in her work. Ms. Quam, however, cannot be a comparator because she held a higher-level manager position. Plaintiff further alleges that Ms. Quam was allowed to attend the User Conference, while Plaintiff was not. Plaintiff names three other Akima employees who were permitted to attend the conference as well. However, all the employees who were allowed to attend the conference were level director or manager employees performing different positions than Plaintiff. Furthermore, one of the employees permitted to attend the conference was African American, the same race as Plaintiff. This evidence suggest that Akima did not discriminate based on employees' race in deciding who was permitted to attend the conference. Plaintiff has failed to show that any of these employees were "substantially similar" to her.

For all of these reasons, Plaintiff fails to establish a <u>prima facie</u> case of race discrimination under counts I and II of her complaint.

Under the <u>McDonnell Douglass</u> framework, when the plaintiff fails to establish a <u>prima facie</u> case of discrimination, the burden never shifts to the defendant to provide an explanation for the reason for her discharge. <u>See</u> <u>King</u> at 150. Generally, any evidence that Plaintiff has presented to show pretext is not considered by the court when the court finds there is no <u>prima facie</u> case established. <u>Id</u>.

9

Even if Plaintiff could establish a prima facie case of race discrimination, Akima has met its burden in showing it had a legitimate, nondiscriminatory business reason for its decision to reduce Plaintiff's position to part-time, on-call. Defendant looked for ways to consolidate positions or fill work needs in a more cost-effective way starting in 2017. After analyzing Plaintiff's duties, the Defendant discovered that Plaintiff's job did not have enough work to warrant a full-time position. For this reason, they decided to change Plaintiff's position to a part-time, on-call position. Financial decisions of the company are a legally sufficient justification for terminating an employee. See Mereish v. Walker, 359 F.3d 3303, 335 (4th Cir. 2004) (citing Schuster v. Lucent Techs., Inc., 327 F.3d 569, 571, 572, 574-75 (7th Cir. 2003) (recognizing as a legitimate reason for a discharge "an effort to address financial conditions," where management "determined that retaining one employee was more integral to the success of the venture than retaining the plaintiff")). Therefore, Akima's proffered reason that it was looking for ways to consolidate position or fill work needs in a most cost-effective way is a legitimate, nondiscriminatory business reason for its decision to reduce Plaintiff's position to part-time.

The burden then shifts to Plaintiff to show that Defendant's reason is pretextual. Plaintiff cannot meet her burden of providing pretext either by showing that Akima's explanation is "unworthy of

10

credence" or by offering other forms of circumstantial evidence. See Texas Dep't of Community Affairs, at 256 (stating that a plaintiff can successfully show pretext "either directly by persuading the court that a discriminatory reason more likely motivated the employer or indirectly by showing that the employer's proffered explanation is unworthy of credence").

Plaintiff argues that Defendant's reasoning is pretext because Defendant fails to provide any financial documentation to support its alleged business decision. Plaintiff further contends that Akima did not analyze all her tasks when deciding that her position was not necessary, and that Defendant violated its own company policies. However, Plaintiff has not produced any actual evidence that Akima discriminated against her because of her race or that its actions were pretextual. Plaintiff's disagreement with Akima's decision to reduce her job to part-time may be disagreeable to her but it is not the business of this Court to weigh employment decisions of a company. Speculating reasons for why Defendant reduced her position to part-time, on-call, not increasing her salary, and not allowing her to attend the User Conference does not produce any actual evidence to show that Akima's proffered reasons were false. The evidence in the record is simply not sufficient to permit a reasonable jury to conclude that Akima's reason for reducing Plaintiff's job to a part-time, on-call position was pretext for racial discrimination. Guessous v.

Fairview Property Investments, LLC, 828 F.3d 208 (4th Cir. 2016). For these reasons, Defendants are entitled to summary judgment on counts I and II.

Count III of Plaintiff's complaint asserts a claim of race discrimination and retaliation under Fairfax County Human Rights Ordinance, Fairfax County Code § 11-1-1 et. seq. The Fourth Circuit has held that specific ordinance "does not create a private right of action." Lawrence v. Mars, Inc., 955 F.2d 902, 907 (4th Cir. 1992) (granting summary judgment on the ground that a private right of action does not exist). Therefore, Defendant is entitled to summary judgment as to count III.

In count IV of her complaint, Plaintiff asserts retaliation against Akima by terminating her employment based on her having made complaints and participating in protected activity in violation of Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e-16 et seq., 42 U.S.C. § 1981. To establish a prima facie case of retaliation, Plaintiff must show by a preponderance of the evidence that: 1) she engaged in a protected activity; 2) her employer acted adversely against her; and 3) the protected activity and the adverse action were causally connected. EEOC v. Navy Fed. Credit Union, 424 F.3d 387, 405-06 (4th Cir. 2005). Plaintiff alleges that she engaged in protected activity when she spoke with her former supervisor about how she felt she was being treated differently by not being allowed to attend the User Conference.

12

Plaintiff alleges that the adverse action against her by Akima was reducing her job to part-time, which she alleges occurred the next day after she spoke with her former supervisor.

In order to establish that she was engaged in a protected activity, Plaintiff must show that she opposed a prohibited discriminatory practice or participated or assisted in an investigation or charge of discrimination. 42 U.S.C. § 2000e-3(a). Protected activity "encompasses utilizing informal grievance procedures as well as staging informal protests and voicing one's opinions in order to bring attention to an employer's discriminatory activities." Laughlin v. Metro. Wash. Airports Auth., 149, F.3d 253, 259 (4th Cir. 1998). Plaintiff has not produced any evidence that she ever filed a formal internal complaint and acknowledges that she did not use the word "race" when she was informally complaining to her old supervisor. There is no evidence that at the time she complained to her old supervisor about not being able to attend the conference that she indicated any concern that it was because of her race. The record lacks evidence to establish that Plaintiff engaged in protected activity to satisfy a showing of a prima facie case of retaliation. Therefore, Defendant is entitled to summary judgment as to count IV.

Lastly, Plaintiff alleges a hostile work environment claim against Akima. To establish a hostile work environment claim,

13

Plaintiff must allege that the harassment was based on race and that the harassment was sufficiently severe or pervasive to alter the conditions of employment and create an abusive environment. Chao v. Rivendell Woods, Inc., 415 F.3d 342, 347 (4th Cir. 2005). Specifically, Plaintiff must establish that 1) she is a member of a protected class or engaged in protected activity; 2) she was subjected to harassment based on her membership in this class or the protected activity; 3) the harassment was sufficiently severe or pervasive so as to alter the terms and conditions of her employment and create a discriminatorily abusive working environment; and 4) there is a basis for imputing liability to the employer. Harris v. Forklift Systems, Inc., 510 U.S. 17, 21, 114 S. Ct. 367, 126 L.Ed.2d 295 (1993). Plaintiff asserts that she suffered from a hostile work environment at Akima when several of her colleagues made unfavorable comments to her. However, none of the comments Plaintiff alleges were based on her race, or even mentioned her race. Plaintiff acknowledged that she did not know why the comments were made. The comments were not severe or pervasive as to alter the terms and conditions of her employment and create an abusive working environment. Additionally, two of the individuals who made the comments are also African American. Plaintiff has not produced any evidence to suggest these comments were based on her race or made in a way that created an environment in which she felt she was being discriminated against based on her

14

race. Therefore, she cannot meet her burden in establishing a <u>prima facie</u> case for hostile work environment. Consequently, summary judgment should be granted as to Plaintiff's hostile work environment claim.

For the foregoing reasons, this Court finds that summary judgment should be granted in favor of Defendant. An appropriate order shall issue.

/s/ Claude M. Hilton
CLAUDE M. HILTON
UNITED STATES DISTRICT JUDGE

Alexandria, Virginia
April 4, 2019